**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

**UNITED STATES OF AMERICA )**
**)**
**vs. ) No. 1:06-cr-76**
**)**
**MARK WILKINS, ) JUDGE COLLIER**
**)**
**Defendant. )**

# SENTENCING MEMORANDUM OF MARK WILKINS

COMES NOW, the Defendant, Mark Wilkins, by and through counsel, and pursuant to 18 U.S.C. Section 3553, respectfully submits this Sentencing Memorandum.

## *Reasons For Downward Departure*

In accordance with 18 U.S.C. Section 3553 and USSG Section 5k2.0, the Court should sentence the Defendant below the Guideline Level (whatever that may be determined to be) for the following reasons:

1. In this matter, Mark Wilkins did not conceive of the plan, organize it, manage it, coordinate it, or do any more than to follow Jay Snyder's instructions. Angela Byrd and Donovan Barnes-Bass ran the title company, Jay Snyder was the mortgage broker, and others were appraisers. These were the professional people who conceived and managed the "scheme". Mark Wilkins signed the paperwork he was instructed to sign and obtained funds and made deposits as instructed. At trial, Jay Snyder waived her 5th Amendment rights and accepted responsibility for this. At most, Mr. Wilkins was a "minor participant" entitled to a reduction of 2 levels under USSG Section 3B1.2.

Case 1:06-cr-00076 Document 48 Filed 04/02/07 Page 1 of 8 PageID #: <pageID>

2. Mark Wilkins is an electrician and handyman by trade. He has no experience in title work, appraising, or mortgage loans. There are ads in newspapers, on television, and elsewhere speaking of the widespread availability of "no money down" mortgages.. There is at least one regular half-hour infomercial that extols and instructs on "no money down" mortgages. Thus, what Jay Snyder directed the Defendant to do did not have the obvious appearance of illegality as suggested by the Government. While the Jury did not agree with the Defendant's position, this context of his conduct should be accounted for in a reduced sentence.

3. When properties were purchased, Mr. Wilkins put an enormous amount of personal man hours into fixing up and maintaining the properties. Much of the money which the Government asserts as being "excess", was put into repairing and upgrading the properties. Many improvements to the properties took place and Mr. Wilkins and many man hours were put into improving and enhancing the value of the properties. In that sense the proceeds put into the properties enured to the benefit of the mortgage companies which foreclosed on the properties. Those funds used for the purpose of improving the properties should be excluded from the loss computation.

## *Sixth Amendment's Application to Sentencing*

In ***U.S. v. Davis***, 397 F.3d 340, C.A.6 (Ohio), 2005 it was stated:

"Defendant also challenges the amount of monetary loss the district court concluded was attributable to his conduct. This issue is squarely governed by the Supreme Court's decisions in *Booker* and *Blakely.* It is now settled law that the Sixth Amendment forbids a judge from increasing a defendant's sentence based on facts not admitted by the defendant or proven to a jury beyond a reasonable doubt. *Booker*, 125 S.Ct. at 744-45 (Stevens, J.); ***Blakely*, 124 S.Ct. at 2537**. In other

> words, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority." ***Blakely*, 124 S.Ct. at 2537** (internal citations omitted)."

At trial the Government, through the testimony of Agent Tuggle, introduced a chart ***"Real Estate Transactions Involving Mark Wilkins"*** reflecting Mr. Wilkins received $127,998.15. (Trial Transcript, p. 57, Exhibit 4, "Money Received By Wilkins"), showing Mr. Wilkins received $127,998.15. Since the government utilized the $127,998.15 number at trial, the Defendant's personal conduct should be the focus of his sentence.

Accompanying this Memo are the **Objections to Revised Pre-sentence Report** containing exhibits which reflect amounts of money and man hours spent on fixing up the properties in question. These should be considered as well in the matter set forth in the **Objections to Revised Pre-Sentence Report.**

In ***U.S. v. Wirth***, 437 F.Supp.2d 688, E.D.Mich.,2006, the Sixth Circuit noted:

> Although Wirth is entitled to credit on the loan payments he made in the ordinary course of business, which is reflected in the loan balances noted above, "there is no credit against a loss when payments are made after the detection of the offense." ***United States v. Swanson***, 360 F.3d 1155, 1169 (10th Cir.2004); *see also* ***United States v. Lucas*, 99 F.3d 1290, 1296-97 (6th Cir.1996)** (noting that "the concept of when an 'offense is discovered' relates to discovery by the victim or by the proper authorities, whichever comes first. After discovery, so defined, has occurred, amounts later repaid on a fraudulently obtained loan cannot be set off from the amount of loss"). As the Tenth Circuit has explained, "the purpose of the loss calculation under the Sentencing Guidelines is 'to measure the magnitude of the crime at the time it was committed. The fact that a victim has recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sentencing.' " Swanson, 360 F.3d at 1169 (quoting ***United States v. Nichols*, 229 F.3d 975, 979 (10th Cir.2000)**). The Court believes that the loan balances on the fraudulent loans at the time the crime was discovered represents an accurate measure of the actual loss for sentencing purposes.

## Loss Disparities and Sentencing Disparities

Following ***Koon v. United States***, 518 U.S. 81 (1996), Courts have acted to avoid disparities among co-defendants.

In ***United States v. Williams***, 894 F.2d 208 (6th Cir. 1990), two defendants who were not present at a drug sale or charged with violating **18 U.S.C. Section 924** had been given a two-level increase for weapons possession by the Trial Court. One of the alleged co-conspirators who was charged with the **924(c)** violation was acquitted of that charge; the other's trial resulted in a mistrial. Thus the non-present non-charged defendants received a firearms enhancement, while those actually charged with the firearms violation were neither convicted nor received the enhancement. The Sixth Circuit ruled that

> "(t)his is contradictory to the rationale for imputing co-conspirator liability and violates the spirit of the Guidelines. ***One purpose of Congress in establishing the Federal Sentencing Guidelines was to narrow the wide disparity imposed by different federal courts for similar conduct by similar offenders***. We find that the district court's inconsistent application of the weapons possession enhancement with regard to co-conspirators Williams, Blanton and Davis created the type of disparity which the Guidelines seek to avoid. 894 F.2d 208 , 211. (Emphasis added).

In ***U. S. vs. Crouse***, 145 F.3d 786, C.A.6 (Mich.),1998., the Sixth Circuit held::

> "The government, citing **USSG §§ 3B1.1, 3B1.2**, argues that the Guidelines, "through provisions enhancing or reducing a defendant's sentence depending on his role, already account for proportional differences in culpability among perpetrators of a crime." This circuit has previously held that proportionality in sentences may support a departure. See ***United States v. Nelson***, 918 F.2d 1268, 1273 (6th Cir.1990)("[W]e conclude that the district courts generally ... are not precluded as a matter of law from departing from the guidelines in order to generally conform one conspirator's sentence to the sentences imposed on his co-conspirators."). This court has, in fact, specifically noted that **§ 3B1.2** does not preclude consideration of the goal of proportionality among indicted co-conspirators as a basis for departure. ***United States v. Epley***, 52 F.3d 571, 583 (6th Cir.1995)(but refusing to allow departure to achieve proportionality among

> unindicted co-conspirators). All of these cases on proportionality, however, concern a defendant's sentence being reduced to a level similar to those of a co-defendant. Here, the other perpetrators have received longer sentences than Crouse, and the court departed below the levels for the co-conspirators in order to sentence Crouse disproportionately. Neither ***Epley*** nor the Guidelines authorize a downward departure to place Crouse's sentence significantly below those of the other perpetrators because of his more insignificant role in the offense, as the Guidelines do allow for that scenario under **USSG §§ 3B1.1** and **3B1.2.** " 145 F.3d 786, 791.

In ***U.S. vs. Thompson***, 2007 WL 597015, C.A.6 (Ohio), 2007, the Sixth Circuit noted that disparities should not be eliminated for defendants with different criminal histories:

> "**18 U.S.C. § 3553(a)(6)**, which provides that one of the factors that a court must consider when imposing a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." However, in a case reversing a below-Guidelines departure prior to ***Booker,*** this court reasoned that "[t]he objective of this statute is not to eliminate sentence disparities between defendants of the same case who have different criminal records; rather, the objective is to eliminate unwarranted disparities nationwide. **United States v. LaSalle**, 948 F.2d 215, 218 (6th Cir.1991)." p. 3.

Where the Court should eliminate sentencing disparities in this case is in the amount of loss attributable to the various defendants. The amount of loss attributable to Angela Marie Byrd for restitution purposes was $191,030.26 and for Donovan Barnes-Bass $191,030.26 . (Amended Judgments). These are the individuals who conceived of the scheme or at least brought it to the Chattanooga community and educated others in the same course of conduct should not be less for sentencing purposes than the loss attributable to Mark Wilkins who did not organize or lead the portion of the conspiracy in which he was convicted of participating. Byrd and Barnes-Bass were, in truth, responsible for this scheme throughout our community and every loss flowing from it. It is understood that they were eligible for a downward departure for

their cooperation pursuant to **USSG Section 5k1.1.** However, looking at the true loss factor, they were responsible for far more than Mark Wilkins. The losses attributable to Wilkins should not be determined to be greater than those attributable to the more culpable defendants.

## ***Guideline Version Disparities***

In the related cases of ***U.S. vs. Angela Marie Byrd***, Docket No. 1:04-CR-148-001 and ***U.S. vs. Donovan Barnes-Bass***, Docket No. 1:04-CR-148-002, the Defendant understands that the Court used an earlier edition to the sentencing guidelines and used a different method of calculating the loss, and thus calculating the sentences. To use a different method and guidelines in the instant matter creates a prohibited "unwarranted disparity". Byrd and Bass received 18 month sentences. Their original guideline sentences were pursuant to the 2001 version of the Guidelines.

As was pointed out in ***U.S. v. Davis,*** 397 F.3d 340, C.A.6 (Ohio), 2005:

> "Generally, the district court is instructed to apply the version of the Guidelines in place at the time of sentencing. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.11(a) (2002). However, the Guidelines clearly instruct the court to apply the version in place at the time the defendant's offense was committed if applying the current Guidelines would amount to a violation of the *ex post facto* clause, **Article I, § 9, cl. 3 of the United States Constitution**. **U.S.S.G. § 1B1.11 (a), (b)(1) (2002)**; [FN6] *see *347 also* ***Miller v. Florida,*** **482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)**; ***United States v. Kussmaul,*** **987 F.2d 345, 351-52 (6th Cir.1993)**. The *ex post facto* clause is implicated where a law punishes retrospectively; "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.' " ***Miller,*** **482 U.S. at 430, 107 S.Ct. 2446, 96 L.Ed.2d 351** (quoting ***Weaver v. Graham,*** **450 U.S. 24, 31, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)**); *see also* ***United States v. Milton,*** **27 F.3d 203, 210 (6th Cir.1994)** (noting that "when the guidelines in effect at the time of sentencing provide for a higher range than those in effect at the time the crime was committed ... an *ex post facto* problem exists and the court must not impose a sentence in excess of that allowed by the older guidelines.") (citation omitted)." at 346, 347.

Thus, use a downward departure is necessary and warranted to bring this Defendant's sentence in proportion with that of the defendants, Byrd and Barnes-Bass.

Respectfully submitted,
/s/ *A. Christian Lanier, III*

A. Christian Lanier, III
Attorney For Defendant
Suite 150, 615 Lindsay Street
Chattanooga, TN 37403
Telephone 423-756-1015
Fax 423-756-1208
Lanierlaw@comcast.net
BPR # 4670

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ *A. Christian Lanier, III*

A. Christian Lanier, III
Attorney For Defendant
Suite 150, 615 Lindsay Street
Chattanooga, TN 37403
Telephone 423-756-1015
Fax 423-756-1208
Lanierlaw@comcast.net
BPR # 4670